KEKER, VAN NEST & PETERS LLP
MICHELLE YBARRA - # 260697
mybarra@keker.com
TRAVIS SILVA - # 295856
tsilva@keker.com
ROBYN PARISER - # 335017
rpariser@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Petitioner SPINX GAMES, LTD.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SPINX GAMES, LTD.,<br><br>        Petitioner,<br><br>    v.<br><br>SHARON KING,<br><br>        Respondent. | Case No.  3:23-cv-1485<br><br>**PETITION TO COMPEL ARBITRATION IN SAN FRANCISCO, CALIFORNIA**<br><br>Date:        May 10, 2023<br>Time:        2:00 p.m.<br>Dept:        Courtroom 2 – 17th Floor<br>Judge:       Hon. William H. Orrick<br><br>Date Filed: March 29, 2023<br>Trial Date:  None Set |

2105868

## I.      INTRODUCTION

1.      This is a Petition to Compel Arbitration brought under the Federal Arbitration Act ("FAA").  Petitioner SpinX Games, Ltd. ("Petitioner" or "SpinX") publishes mobile phone video game applications ("apps") that can be played on mobile devices like cell phones.  Its apps are "social casino games" that use virtual coins and a virtual slot machine-like interface as the central components of game play.  As is common with mobile video game apps, SpinX's current apps allow users to make "in-app" purchases, in this instance for virtual coins, but SpinX's apps are free to play, and most users do not pay any money to play SpinX's apps.  The virtual coins that are a part of the game environment have no value of any kind and cannot be redeemed for cash, prizes, or anything else.

2.      Respondent Sharon King ("Respondent") alleges that she uses SpinX's video game apps.  Respondent assented to SpinX's Terms of Service, and those Terms of Service contain an arbitration agreement.  That arbitration agreement contains a provision ("Arbitration-Venue Provision") setting San Francisco as the location of the arbitration, so long as SpinX reimburses Respondent's reasonable travel expenses to the arbitration, as determined by the arbitrator.

3.      Respondent demanded arbitration against SpinX, arguing that SpinX's free-to-play apps violate New Jersey anti-gambling laws.  Respondent seeks to recover the money she paid to SpinX—as well as the money that *any* New Jersey resident paid to SpinX during the statute-of-limitations period.  Respondent is, in substance, seeking to bring a class action in arbitration, even though the parties' arbitration agreement contains a class action waiver.

4.      Respondent isn't a solo actor.  Respondent demanded arbitration at the same time that four other SpinX users, who are represented by the same counsel, and who all demanded arbitration using virtually identical arbitration demands.  The demands all seek state-wide damages and the only material difference among them is that each of the five demands purports to arise under the laws of a different state.  In sum, Respondent, her co-litigants, and their counsel are seeking to bring a five-state class action against SpinX, even though Respondent and her co-

1

PETITION TO COMPEL ARBITRATION IN SAN FRANCISCO, CALIFORNIA
Case No.

2105868

litigants signed a class-action waiver and agreed that any individual arbitrations they might initiate would not be consolidated without SpinX's consent.[1]

5.      Contravening the Arbitration-Venue Provision, Respondent (and her co-litigants) demanded that arbitration occur in or near each of their hometowns; in the case of Respondent, that is Sewell, New Jersey.  In response to this demand, the arbitration provider, the American Arbitration Association ("AAA"), asked SpinX to waive the provision of the parties' arbitration agreement setting San Francisco as the location of the arbitration (the "Arbitration-Venue Provision").  The AAA stated that, unless SpinX waives its rights under the Arbitration-Venue Provision, it will not administer the parties' arbitration.

6.      The Arbitration-Venue Provision serves three important purposes.  First, the arbitration agreement contains a California choice-of-law provision that is uncontroverted in this case.  It makes sense for parties that have agreed to arbitrate under California law to hold their arbitration in California before a California arbitrator familiar with California law.  Second, SpinX's principal place of business is in Asia.  It is foreseeable that one or more witnesses from Asia will need to testify, and it is more convenient for incoming travelers from Asia to travel to San Francisco than to four states dispersed throughout the United States.  Third, it enhances predictability and minimizes costs for SpinX to have all in-person arbitration hearings in which it participates occur in the same place: San Francisco.

7.      SpinX asked Respondent to notify AAA that she consents to San Francisco, as required by the parties' arbitration agreement.  Respondent declined, forcing SpinX to bring this Petition seeking to compel Respondent to arbitrate in San Francisco.

---

[1] On March 8, 2023, SpinX filed substantively identical Petitions to Compel Arbitration against four of the claimants who are represented by common counsel.  *See SpinX Games, Ltd. v. Viel*, No. 3:23-cv-10337-WHO ("*Viel*"); *SpinX Games, Ltd. v. Bennefield*, No. 3:23-cv-01338-WHO ("*Benenfield*"); *SpinX Games, Ltd. v. Pyles*, No. 3 3:23-cv-01339-WHO ("*Pyles*"); and *SpinX Games, Ltd. v. Ross*, No. 3:23-cv-01340-WHO ("*Ross*").  On March 15, 2023, SpinX filed an unopposed motion to relate all of those cases.  *See Viel*, Dkt. No. 9.  On March 21, 2023, the court issued orders relating the cases.  *See Viel*, Dkt. No. 14; *Bennefield*, Dkt. No. 12; *Pyles*, Dkt. No. 13; *Ross*, Dkt. No. 11.  At the time the other Petitions were filed, the AAA had closed Ms. King's arbitration because she failed to pay the AAA's filing fee.  Ms. King has since paid her filing fee to the AAA, the AAA has re-opened her arbitration, and Ms. King has confirmed that she refuses to arbitrate in San Francisco.  SpinX will file a motion to relate the Ms. King's case to the other actions.

## II.     PARTIES

8.      SpinX Games, Ltd. is a corporation incorporated under the laws of Hong Kong. Its principal place of business is in Hong Kong.  It publishes mobile video game apps known as social casino games.

9.      Respondent Sharon King alleges that she is a resident of Gloucester County, New Jersey.  She alleges that she has played SpinX apps, although in her demand she fails to identify the game(s) that she has played.  She alleges that she has paid "hundreds or thousands" of dollars to SpinX, which she characterizes as gambling "losses."  Ms. King has consented to the personal jurisdiction of this Court.

## III.    JURISDICTION, VENUE, AND INTRA-DISTRICT ASSIGNMENT

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  Petitioner is a citizen of Hong Kong.  Respondent is a citizen of New Jersey.  While Petitioner denies that it is liable to Respondent at all, or that Respondent can proceed with an action to recover money paid by third parties to SpinX, SpinX alleges that the amount of money that New Jersey residents paid to SpinX during the statute of limitations period exceeds $75,000.

11.     Venue is proper under 18 U.S.C. § 1391 and 9 U.S.C. § 4 and pursuant to the SpinX Terms of Service.

12.     Assignment to this Court's San Francisco/Oakland division is proper because the omission giving rise to this Petition occurred in San Francisco.

## IV.    ALLEGATIONS

### A.     SpinX apps and the Terms of Service

13.     SpinX publishes mobile video game apps known as social casino games.  Game play centers on "winning" and "losing" virtual coins and a slot machine-like interface.  The virtual coins have no value; they cannot be redeemed for cash or prizes or anything else.

14.     It is free to play SpinX's current apps, and most SpinX users never pay SpinX anything to play.  However, SpinX does offer users the option to make "in-app" purchases, typically to buy more virtual coins.  These purchases are unnecessary to play the app because, in

2105868

the apps' current version, when a user's balance of virtual coins reaches zero, the user automatically receives additional virtual coins, such that the user can continue to play.

15.     Before a SpinX user can access a SpinX app, the user must assent to the SpinX Terms of Service.  The current version of the Terms of Service is attached hereto as **Exhibit A**. Section 18 of the Terms of Service is an arbitration agreement between SpinX and its users.  The arbitration agreement is optional; any SpinX user can opt out of the arbitration agreement by providing written notice to SpinX within 30 days of initial registration.

16.     The scope of the arbitration provision is broad: "If you live in the United States or another jurisdiction that allows you to agree to arbitration, you and COMPANY agree that all Disputes, as defined below, between you and COMPANY will be settled by binding arbitration, unless otherwise provided herein."  Ex. A, § 18.  The arbitration provision further specifies "YOU AND COMPANY EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE WITH THIS PROVISION, AND YOU ARE WAIVING YOUR RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING."  *Id.* § 18(b).

17.     The Arbitration-Venue Provision allows SpinX to designate San Francisco as the location of the arbitration: "For Disputes between the COMPANY and users who are residents of the United States, you or COMPANY may initiate arbitration in either San Francisco, California or the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution. In the event that you select the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, COMPANY may transfer the arbitration to San Francisco, California in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the arbitrator."  *Id*. § 18(f).

2105868

**B.      Respondent's Demand**

18.      Respondent, who has assented to the current Terms of Service, alleges that she has played SpinX apps and made in-app purchases within those apps.  (Respondent has failed to identify the game, to identify the amount she spent on SpinX's platform, or to provide SpinX with her User ID so that SpinX can look up Respondent's activity.)  Respondent alleges that she has "lost" "hundreds or thousands" of dollars via in-app purchases. Respondent's Demand for Arbitration is attached hereto as **Exhibit B**.

19.      On December 19, 2022, Respondent—recognizing that her dispute clearly falls within the scope of the parties' arbitration agreement—demanded arbitration against SpinX. Respondent alleges that SpinX's game violates New Jersey anti-gambling laws.  Specifically, Respondent alleges that "[u]nder New Jersey law, the games in SpinX's casino apps constitute illegal slot machines, and the purchase of coins in the apps, which can only be used to play the slot machines, are unlawful gaming transactions.  N.J.R.S. 2A:40-1." Ex. B, ¶ 7.  The demand seeks to recover, first, the money Respondent paid to SpinX and, second, all money that any New Jersey resident paid to SpinX via in-app purchases during the statute of limitations period. Respondent demanded arbitration in Sewell, New Jersey.

20.      On January 12, 2023, before the AAA initiated the arbitration, SpinX informed the AAA that it was electing to set San Francisco as the location of the arbitration pursuant to the Arbitration-Venue Provision.  Respondent objected and reiterated her request for arbitration in Massachusetts.

21.      In response, the AAA asked SpinX to waive its right under the Arbitration-Venue Provision to have San Francisco be the location of the arbitration.  The AAA informed SpinX that if SpinX did not agree to waive its rights under the Arbitration-Venue Provision, then the AAA would decline to administer the arbitration.  The AAA further stated that, under its rules, if the AAA declined to administer the arbitration, then Respondent would be able to proceed with her

2105868

claims in court.[2]  The AAA gave SpinX until April 26, 2023, to waive its rights under the Arbitration-Venue Provision.

22.     SpinX asked Respondent to comply with the arbitration agreement's Arbitration-Venue Provision and inform the AAA that Respondent would consent to arbitrate in San Francisco.  Respondent refused.

**C.     Nature of these proceedings and the relief requested**

23.     9 U.S.C. § 4 provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

24.     Save for the parties' arbitration agreement, this Court would have jurisdiction over this dispute, and venue would be proper here, because Section 23 of the Terms of Service contains a contractual jurisdiction and venue provision.

25.     SpinX requests that this Court enter an order compelling Respondent to arbitrate "in the manner provided for" in the SpinX Terms of Service and, in particular, that San Francisco, California be set as the location for the arbitration.

26.     This Court's intervention is necessary to safeguard SpinX's rights under the arbitration agreement.  Respondent and the AAA present SpinX with a Hobson's choice: the AAA has "asked" SpinX to waive its rights under the Arbitration-Venue Provision.  Waiving a right could deprive SpinX of seeking further review of the AAA's administrative decision.  SpinX cannot appeal to the arbitrator, because the AAA has pre-conditioned appointing an arbitrator on SpinX waiving its rights—and the AAA takes the position that if SpinX declines to waive its rights under the Arbitration-Venue Provision, then, the AAA claims, SpinX would waive its

---

[2] SpinX does not waive its rights under the arbitration agreement and disagrees that, if the AAA administratively closes these matters, that Respondent is then free to pursue her claim in court.

PETITION TO COMPEL ARBITRATION IN SAN FRANCISCO, CALIFORNIA
Case No.

2105868

rights to arbitration entirely.[3]  Respondent could remedy this situation if she—as she is contractually bound to do—consented to arbitrate in San Francisco.  But she has refused to do so. This is a refusal to arbitrate within the meaning of Section 4 of the FAA.

27.     Therefore, to uphold its contractual right to arbitrate, SpinX seeks an order compelling Respondent to arbitrate according to Section 18 of the Terms of Service, including the Arbitration-Venue Provision.

## V.     PRAYER FOR RELIEF

Petitioner requests that:

28.     The Court take jurisdiction over this petition pursuant to Title 9 of the United States Code, 28 U.S.C. § 1332, and the Terms of Service.

29.     The Court issue an order directing Respondent to submit her dispute to arbitration "in the manner provided for" in the SpinX Terms of Service, including in particular, that the location of the arbitration be set as San Francisco, California.

30.     SpinX also seeks to recover costs of suit and any other relief that the Court deems just and proper.

Dated:  March 29, 2023                          KEKER, VAN NEST & PETERS LLP

                                   By:     */s/ Michelle Ybarra*
                                           MICHELLE YBARRA
                                           TRAVIS SILVA
                                           ROBYN PARISER

                                           Attorneys for Petitioner SPINX GAMES, LTD.

---

[3] Again, SpinX does not waive its right to arbitrate.  *See supra*, n.3.

2105868

# Exhibit A

Terms of Service

DATE LAST MODIFIED on November 10, 2022. These are the Terms of Service for our Site, Applications and Service. For purposes of these Terms of Service, "COMPANY" shall mean SpinX Games Ltd., its partners, parent companies, subsidiaries, licensees, licensors and affiliates, including Grande Games Ltd. and Beijing Bole Technology Co., Ltd. (collectively, also referred to herein as "we", "our" or "us").

1. **Acceptance of Terms**

THESE TERMS OF SERVICE ("TERMS") ARE A LEGAL AGREEMENT BETWEEN YOU ("YOU" OR "YOUR") AND THE COMPANY (AS DEFINED ABOVE). BY DOWNLOADING, INSTALLING ANY OF OUR MOBILE-GAME APPLICATIONS ("APPLICATION") AND USING IT IN CONNECTION WITH SERVICES PROVIDED BY US OR OTHERWISE ACCESSED THROUGH THE USE OF AN APPLICATION (SUCH SERVICES AND THE APPLICATION COLLECTIVELY, THE "SERVICES") YOU AGREE THAT YOU HAVE READ, UNDERSTOOD, ACCEPT AND AGREE TO BE BOUND BY THESE TERMS. IF YOU DO NOT AGREE TO THESE TERMS, DO NOT ACCESS OR OTHERWISE USE THE SERVICE. YOU ALSO AFFIRM THAT YOU HAVE READ AND UNDERSTAND OUR PRIVACY POLICY.

IMPORTANT NOTE: These Terms contain a Dispute Resolution and Arbitration Provision, including a Class Action Waiver, that affects your rights under these Terms and with respect to any dispute you may have with the COMPANY. You may opt out of the binding individual arbitration and class action waiver as provided below.

COMPANY reserves the right, in its sole discretion, to modify or change these Terms at any time by posting the changes on or within the Application or other parts of the Service. Your continued use of the Service following the posting of such changes constitutes your acceptance of the revised Terms. COMPANY may use reasonable commercial efforts to provide notice of material changes to you. If the modified Terms are not acceptable to you, your only recourse is to discontinue your use of the Service. You agree that COMPANY may change any part of the Service, including its content, at any time or discontinue the Service or any part thereof, for any reason, without notice to you and without liability.

2. **Privacy**

You acknowledge and agree that COMPANY will collect from you and your device, use, and share certain personal information as described in our posted Privacy Policy for the respective Services. By accessing and using our Services, you agree that you have read and acknowledge such Privacy Policies.

3. **Eligibility**

To use the Service, you must be a natural person, at least 18 years old, who is assigned to the e-mail address associated with your registration. At our sole discretion, we may require proof that you meet this condition in connection with your use of the Service. Failure to comply with this condition will result in the closing of your Account and the loss of all Virtual Items (including Loyalty Points) (each as defined below) accumulated through your use of the Service.

4. **License**

To use the Service, you must have a mobile device that is compatible with the Application. COMPANY does not warrant that the Application will be compatible with your mobile device. If you decide to use the Service, subject to your agreement and compliance with these Terms and the Privacy Policy, COMPANY hereby grants you a non-exclusive, non-transferable, revocable license to install and use an object code copy of the Application for one registered account on one mobile device owned or leased solely by you. COMPANY also grants you a personal, non-exclusive, non-transferable, non-sublicensable, revocable, limited scope license to access and use those portions of the Service that are not part of the Application. Use of the Service shall be solely for your own, private, non-commercial entertainment purposes and for no other purpose whatsoever. If the Service or any part thereof is determined to be illegal under the laws of the jurisdiction in which you are situated, you shall not be granted any license to use the Application or any other part of the Service, and must refrain from using it. You may not: (i) modify, disassemble, decompile or reverse engineer the Application; (ii) rent, lease, loan, resell, sublicense, distribute or otherwise transfer the Application to any third party or use the Application to provide time sharing or similar services for any third party; (iii) make any copies of the Application; (iv) remove, circumvent, disable, damage or

otherwise interfere with security-related features of the Application, features that prevent or restrict use or copying of any content accessible through the Application, or features that enforce limitations on use of the Application; or (v) delete the copyright and other proprietary rights notices on the Application. You acknowledge that COMPANY may from time to time issue upgraded versions of the Application, and may automatically electronically upgrade the version of the Application that you are using on your mobile device, but that COMPANY has no obligation to do so. You consent to such automatic upgrading on your mobile device, and agree that the terms and conditions of these Terms will apply to all such upgrades. The foregoing license grant is not a sale of the Application or any copy thereof, and COMPANY and its third party licensors or suppliers retain all right, title, and interest in and to the Application (and any copy of the Application). Standard carrier data charges may apply to your use of the Application.

5. **Virtual Items**

From time to time during your use of the Service, you may have the opportunity to "earn", "buy" or "purchase" (a) virtual in-game items; or (b) virtual in-game points, including but not limited to virtual coins, cash or points, all for use in the Service (together with virtual in-game items, "Virtual Items"). You do not in fact "own" the Virtual Items and the amounts of any Virtual Item do not refer to any credit balance of real points or its equivalent. Rather, by "earning", "buying" or "purchasing" Virtual Items, you are granted a limited license to use the software programs that manifest themselves as the Virtual Items. The purchase and sale of such limited licenses to use Virtual Items is a completed transaction upon redemption of the applicable payment and shall under no circumstances be refundable, transferable or exchangeable including, without limitation, upon termination of your Account, termination of these Terms, and/or the discontinuation of the Service. COMPANY prohibits and does not recognize any purported transfers of Virtual Items effectuated outside of the Service, or the purported sale, gift or trade of anything that appears or originates in the Service, unless otherwise expressly authorized by COMPANY in writing. Accordingly, you may not sublicense, trade, sell or attempt to sell in-game Virtual Items for real money, or exchange Virtual Items for value of any kind outside of a game, without COMPANY's written permission. Any such transfer or attempted transfer is prohibited and void, and will subject your Account to termination. You acknowledge and agree: (a) that COMPANY may change the price of Virtual Items at any time, without notice, for any reason or for no reason, (b) that the amount of virtual points necessary to obtain certain Virtual Items may fluctuate, and (c) that COMPANY has no liability to you for any changes in the price of such Virtual Items and/or the amount of virtual points necessary to obtain Virtual Items. COMPANY reserves the right, without prior notification, to limit the quantity of the Virtual Items you can purchase and/or to refuse to allow you to purchase such Virtual Items. You acknowledge and agree that COMPANY shall have no liability for loss of Virtual Items due to any unauthorized third party activity, such as hacking, phishing, password mining, social engineering, and/or any other unauthorized third party activity. COMPANY may replace such lost Virtual Items at its sole discretion on a case-by-case basis, without incurring any further obligation or liability. COMPANY owns, has licensed, or otherwise has rights to use all of the content that appears on or in the Service. Notwithstanding any provision to the contrary herein, you agree that you have no right or title in or to any content that appears in the Service, including without limitation the Virtual Items therein, whether "earned" in a game or "purchased" from COMPANY.

6. **Loyalty Points**

You may have the opportunity to accumulate "Loyalty Points" through your use of the Service. Loyalty Points are virtual in-game points that you can use to "purchase" other Virtual Items within the Service. As with all Virtual Items, you do not in fact own the Loyalty Points you accumulate and the amounts of any Loyalty Points you accumulate do not refer to any credit balance of real currency or its equivalent. Rather, by "earning", "buying", or "purchasing" Loyalty Points, you are merely granted a limited license to use the software programs that manifest themselves as the Loyalty Points. In the event COMPANY encounters issues with the game that impact the accumulation of Loyalty Points and/or the redemption of Rewards, COMPANY reserves the right to correct any such errors.

7. **Accumulating Loyalty Points**

You may accumulate Loyalty Points by taking certain actions while using the Service. For example, you may earn Loyalty Points by posting your in-game achievements to your social media account, "liking" certain aspects of the Service, playing the games for a specified duration, or participating in certain in-game offers. The foregoing list is solely for purposes of example and explanation and is not meant to be exclusive or exhaustive. Loyalty Points are NOT and WILL NOT be awarded or earned in any way related to or based upon the outcome of any game you play during your use of the Service.

8. **Using Loyalty Points**

You may exchange your accumulated Loyalty Points for in-game Virtual Items in the Service. You may also exchange your Loyalty Points for Rewards in the "Rewards" area of the Service. In order to redeem a Reward, you must have a valid account connected with the Application. The first time you exchange your Loyalty Points for Rewards, you will be asked to provide your name and e-mail address. The name you provide must match the name that appears on a government-issued identification belonging to the person who has accumulated the Loyalty Points through his/her use of the Service.

Once you have exchanged Loyalty Points for a Reward, you are said to have "purchased" that Reward. After purchasing your Reward, you will have a limited period of time in which complete a "redemption process" by following a defined "redemption method." Redeeming a reward that has been purchased in the Service secures that reward for your specific use at a particular time. When the redemption process is complete, you may then "use" the reward. A Reward is considered "used" at the moment when it is consumed.

9. **Inactive Accounts**

If you do not use your Account by logging in using the Service at least once every 30 days, your Account will be deemed inactive. You can, at any time, reactivate your Account by logging in and using the Service. When an Account has been deemed inactive, COMPANY may, at its own discretion, expire any Loyalty Points accumulated by you. Once your account is deemed inactive, any Rewards which have been purchased but not yet redeemed may also be expired at the discretion of COMPANY.

10. **Third Party Providers of Goods and Service**

Our Partners reserve the right, in their sole discretion, to change, amend, suspend, cancel, or terminate any program they offer or any aspects and/or terms and conditions thereof, in whole or in part, at any time, with or without notice and for any or no reason. You hereby agree that COMPANY shall have no liability to you as a result of such action by a Partner.

11. **Termination**

COMPANY may terminate or suspend your Account (including, but not limited to, suspending your ability to purchase, redeem or consume Rewards) and/or your access to Service (including, but not limited to, restricting your ability to use the Application) at any time, including for breach of these Terms or otherwise, without notice and without liability to you. Upon any such termination, your access to the Service, including all User Content (as defined below) and Virtual Items, will be disabled and you will lose any Loyalty Points that you have accumulated. COMPANY shall have the right, but not obligation, to store any User Content subsequent to any such termination. You may cancel your Account at any time by discontinuing your use of the Service and/or the Application. COMPANY is in no way liable to you for the effects of any termination or cancellation on your use of the Service or the Virtual Items you have accumulated.

12. **User Content and Feedback**

The Service may include various forums, blogs, and chat rooms where you and other users can post your observations and comments on designated topics ("User Content"). COMPANY cannot guarantee that other users will not use the ideas and information that you share. Therefore, if you have an idea or information that you would like to keep confidential do not post it on the Service. COMPANY IS NOT RESPONSIBLE FOR ANY USER'S USE, MISUSE OR MISAPPROPRIATION OF ANY CONTENT OR INFORMATION POSTED IN ANY FORUMS, BLOGS AND CHAT ROOMS INCLUDING, WITHOUT LIMITATION, YOUR USE, MISUSE, OR MISAPPROPRIATION, OR ANY INFORMATION A USER MAY PROVIDE TO ANY SERVICE PROVIDER OR OTHER USERS. By making available any User Content through the Service, you hereby grant to COMPANY a worldwide, irrevocable, perpetual, non-exclusive, transferable, royalty-free license, with the right to sublicense, to use, copy, adapt, modify, distribute, license, sell, transfer, publicly display, publicly perform, transmit, stream, broadcast, access, view, and otherwise exploit such User Content only on, through or by means of the Service. COMPANY does not claim any ownership rights in any such User Content and nothing in these Terms will be deemed to restrict any rights that you may have to use and exploit any such User Content. You acknowledge and agree that you are solely responsible for all User Content that you make available through the Service. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all User Content that you make available through the Service or that you have all rights, licenses, consents and releases that are necessary to grant to COMPANY the rights in such User Content as contemplated under these Terms; and (ii) neither the User Content nor your posting, uploading, publication, submission or transmittal of the User Content or COMPANY's use of the User Content (or any portion thereof) on, through or by means of the Service will infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other proprietary or intellectual property rights, or rights of publicity or privacy, or result in the violation of any

applicable law or regulation.

COMPANY may or may not regulate User Content and provides no representations or guarantees regarding the accuracy, quality, or integrity of any User Content posted on the Service. You acknowledge that chats, postings, or materials posted by users are neither endorsed nor controlled by COMPANY, and these communications should not be considered reviewed or approved by COMPANY. By using the Service, you acknowledge and accept that you may be exposed to material you find offensive or objectionable. You are solely responsible for your activities in connection with User Content and you agree that COMPANY will not under any circumstances be responsible or liable for any User Content, including, but not limited to, errors in any User Content or any loss or damage incurred by use of the User Content or for any failure to or delay in removing User Content.

COMPANY reserves the right (but shall at no time be obligated) to, in its sole discretion, remove, block, edit, move, disable or permanently delete User Content from the Service with or without notice for any reason whatsoever. You hereby agree that, to the maximum extent permitted by applicable law, COMPANY shall at no time be responsible or held liable for the removal, modification or blocking of material or User Content that may be considered offensive and shall at no time be obligated to effect such removal other than under applicable law. COMPANY welcomes and encourages your feedback, comments and suggestions for improvements to the Service ("Feedback"). You may submit Feedback using the contact information provided on the Site. You acknowledge and agree that all Feedback will be the sole and exclusive property of COMPANY and you hereby irrevocably assign to COMPANY and agree to irrevocably assign to COMPANY all of your right, title, and interest in and to all Feedback, including without limitation all worldwide patent, copyright, trade secret, trademark, moral rights and other proprietary or intellectual property rights therein. At COMPANY's request and expense, you will execute documents and take such further acts as COMPANY may reasonably request to assist COMPANY to acquire, perfect, and maintain its intellectual property rights and other legal protections for the Feedback.

13. **General Rules of Conduct and Usage**

You represent and warrant that you have full right and authority to use the Service and to be bound by these Terms. You agree that you will comply fully with all applicable laws, regulations, statutes, ordinances, and the Terms herein. You undertake that you shall not defraud, or attempt to defraud, COMPANY or other users, and that you shall not act in bad faith in your use of the Service. If COMPANY determines that you do act in bad faith in violation of these Terms, or if COMPANY determines that your actions fall outside of reasonable community standards, COMPANY may, at its sole discretion, make adjustments to the number of Loyalty Points associated with your Account, terminate your Account and/or prohibit you from using the Service. By way of example, you specifically agree that you shall not:

Download the Application, create an Account or access or use any part of the Service if you are under the age of 18;

Use the Service if you are located in a country embargoed by the United States or if you are on the U.S. Treasury Department's list of Specially Designated Nationals;

Use the Service for any commercial purpose or for the benefit of any third party or in a manner not permitted by these Terms;

Access, tamper with, or use non-public areas of the Service, COMPANY computer systems, or the computer systems of our providers and partners;

Attempt to probe, scan, or test the vulnerability of any COMPANY system or network or breach any security or authentication measures;

Avoid, bypass, remove, deactivate, impair, descramble or otherwise circumvent any technological measure implemented by COMPANY or any of our providers or any other third party (including another user) to protect the Service or any part thereof;

Attempt to use the Service on or through any platform or service that is not authorized by COMPANY;

Post, upload, publish, submit, provide access to or transmit any User Content that: (i) infringes, misappropriates or violates a third party's patent, copyright, trademark, trade secret, moral rights or other intellectual property rights, or rights of publicity or privacy; (ii) violates, or encourages any conduct that would violate, any applicable law or regulation or would give rise to civil liability; (iii) is fraudulent, false, misleading or deceptive; (iv) is defamatory, obscene, pornographic, vulgar or offensive; (v) promotes discrimination, bigotry, racism, hatred, harassment or harm against any individual or group; (vi) is violent or threatening or promotes violence or actions that are threatening to any other person; or (vii) promotes illegal or harmful activities or substances;

Interfere with the ability of other users to enjoy using the Service, including but not limited to, disrupting the COMPANY's game environment, or taking actions that interfere with or increase the cost to provide the Service for the enjoyment of other users;

Engage in any act that conflicts with the spirit or intent of the Service, including but not limited to, manipulating or circumventing game policies, game rules or these Terms;

Upload or transmit (or attempt to upload or transmit) files that contain viruses, Trojan horses, worms, time bombs, cancelbots, corrupted files or data, or any other similar software or programs that may damage the operation of the Service or the computers of other users of the Service;

Send any unsolicited or unauthorized advertising, promotional materials, e-mail, junk mail, spam, chain letters or other form of solicitation;

Create false personas, multiple identities, multiple Accounts, set up an Account on behalf of someone other than yourself or otherwise attempt to override or avoid any Loyalty Points or Rewards limits or restrictions established by COMPANY and/or any Rewards Partner;

Obtain or attempt to obtain passwords or other private information from other users of the Service, including but not limited to, personally identifiable information or financial information;

Upload or transmit (or attempt to upload or to transmit), without COMPANY's express permission, any material that acts as a passive or active information collection or transmission mechanism, including, without limitation, clear graphics interchange formats, 1×1 pixels, cookies or other similar devices;

Develop, distribute, use, or publicly inform other members of cheats, automation software, bots, hacks, mods or any other unauthorized third party software or applications;

Exploit, distribute or publicly inform other users of the Service of any game error or bug which gives users an unintended advantage;

Use Virtual Items in a manner that violates these Terms, including transferring or selling Virtual Items or fraudulently obtaining or acquiring Virtual Items or other products or services;

Sublicense, rent, lease, sell, trade, gift, bequeath or otherwise transfer your Account or any Virtual Items associated with your Account to anyone without COMPANY's written permission;

Access or use an Account or Virtual Items that have been sublicensed, rented, leased, sold, traded, gifted, bequeathed, or otherwise transferred from the original Account creator without COMPANY's permission;

Engage in any fraudulent activity with respect to payment methods or advertiser tracking mechanisms;

Violate any applicable law or regulation;

Attempt to interfere with, intercept or decipher any transmissions to or from the servers for the Service;

Interfere with, or attempt to interfere with, the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, or mail-bombing the Service; or

Encourage or enable any other individual or group to do any of the foregoing.

14. **Intellectual Property Ownership**

The Service and all content thereon or therein are protected by copyright, trademark, and other laws of the United States and foreign countries. Except as expressly provided in these Terms, COMPANY and its licensors exclusively own all right, title and interest in and to Service and all content thereon or therein, including all associated intellectual property rights. You will not remove, alter or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Service. You agree that you shall not:

Modify, reverse engineer, decompile, disassemble, decipher or otherwise attempt to derive the source code for any underlying software or other intellectual property used to provide the Service without COMPANY's explicit, prior written permission;

Use, display, mirror or frame the Service, or any individual element within the Service;

Use the intellectual property of COMPANY, or any COMPANY licensor, to adapt, modify or create derivative works based on such intellectual property;

Rent, lease, loan, trade, sell/re-sell access to the Service or any information therein, in whole or part; or

Use or reproduce any COMPANY licensor, or third party trademark or logo without the prior express written consent of the owner of such trademark or logo.

### 15.  Links to Third Party Sites

The Service may contain links to third-party websites or resources that are not owned or controlled by COMPANY. You acknowledge and agree that COMPANY is not responsible or liable for: (i) the availability or accuracy of such websites or resources; or (ii) the content, products, or services on or available from such websites or resources. COMPANY does not control nor does it review, research, verify, validate or approve the third-party sites to which the Service may be linked. Such links, therefore, do not imply any endorsement by COMPANY of such websites or resources or the content, products, or services available from such websites or resources. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites or resources.

### 16.  DMCA Notice

If you are a copyright owner or an agent thereof and believe your work is the subject of copyright infringement on the Service, you may submit a notification of claimed infringement under the Digital Millennium Copyright Act ("DMCA") by providing notice to COMPANY's Designated Agent the following information:

Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit us to locate the material;

Information reasonably sufficient to permit us to contact you, such as an address, telephone number, and, if available, an electronic mail address;

A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

A statement that the information in the notification is accurate, and under penalty of perjury, that you are authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; and

A physical or electronic signature of a person authorized to act on behalf of the owner of a copyright that is allegedly infringed.

COMPANY's Designated Agent for claims of copyright infringement can be reached as follows: by e-mail at intellectualproperty@spinxgames.com or by mail at: SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

You acknowledge that if you fail to comply with substantially all of the above requirements of this section your DMCA notice may not be valid and we may not be able to remove infringing content.

Please also note that under Section 512(f) of the Copyright Act, any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability.

### 17.  Updates to the Site and Service; Maintenance

You acknowledge and agree that COMPANY may update the Service with or without notifying you. COMPANY may require that you accept updates to the Service and you may also need to update third party software from time to time in order to receive the Service. COMPANY conducts maintenance work on its system from time to time. A portion, or sometimes all, of the features of the Service will not be available during maintenance periods. All problems encountered during the use of the Service, including those with regard to

your Account, can be reported to COMPANY when the problem is encountered privacy@spinxgames.com.

18. **Dispute Resolution and Arbitration**

If you live in the United States or another jurisdiction that allows you to agree to arbitration, you and COMPANY agree that all Disputes, as defined below, between you and COMPANY will be settled by binding arbitration, unless otherwise provided herein.

This agreement does not apply (1) if you are a resident of any jurisdiction which prohibits this arbitration agreement, (2) if you opt out of this arbitration agreement as described in section (e) below, or (3) to certain types of Disputes described in section (e) below. Please read this provision carefully.

a. **Purpose**

This Dispute Resolution and Arbitration Provision ("Provision") facilitates the prompt and efficient resolution of any disputes that may arise between you and COMPANY.

Arbitration is a form of private dispute resolution in which persons with a dispute waive their rights to file a lawsuit, to proceed in court and to a jury trial, and instead submit their disputes to a neutral third person (or arbitrator) for a binding decision. In the absence of an arbitration agreement, you may otherwise have a right or opportunity to bring claims in court, before a judge or jury, and/or participate in or be represented in a case filed in court by others (including, but not limited to, class actions). Arbitration replaces the right to go to court. Except as otherwise provided herein, by agreeing to these Terms, you waive your right to litigate claims in court and waive the right to have your claims heard by a judge or jury. There is no judge or jury in arbitration, and court review of an arbitration award is limited. The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorneys' fees).

You have the right to opt-out of this Provision (as explained below), which means you would retain your right to litigate your disputes in a court, either before a judge or jury.

For the purpose of these Terms, including this Provision specifically, "COMPANY" means SpinX Games, Ltd., its partners, parent companies, subsidiaries, licensees, licensors and affiliates, including Grande Games, Ltd. and Beijing Bole Technology Co., Ltd. "Dispute" means any dispute, claim, or controversy between you and COMPANY regarding any aspect of your relationship with COMPANY, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" is to be given the broadest possible meaning that will be enforced.

b. **Agreement to Arbitrate / Waiver of Right to Jury Trial**

YOU AND COMPANY EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE WITH THIS PROVISION, AND YOU ARE WAIVING YOUR RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.

you understand and agree that by entering into this agreement you and COMPANY are each waiving the right to a jury trial or a trial before a judge in a public court. In the absence of this Provision, you and COMPANY might otherwise have had a right or opportunity to bring Disputes in a court, before a judge or jury, and/or to participate or be represented in a case filed in court by others (including class actions). Except as otherwise provided below, those rights are waived. Other rights that you would have if you went to court, such as the right to appeal and to certain types of discovery, may be more limited or may also be waived.

c. **Class Action Waiver**

Except as otherwise provided in this Provision, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless both you and COMPANY specifically agree to do so following initiation of the arbitration. If you choose to pursue your Dispute in court by opting out of this Provision, as specified above, this Class Action Waiver will not apply to you. Neither you, nor any other user of the Service can be a class representative, class member, or otherwise participate in a class,

consolidated, or representative proceeding without having complied with the opt-out requirements above.

### d.  Pre-Arbitration Claim Resolution

For all Disputes, whether pursued in court or arbitration, you must first give COMPANY an opportunity to resolve the Dispute. You must commence this process by written notification to:

**For all United States users:** SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115.

**For all other users:** SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

That written notification must include (1) your name, (2) your address, (3) a written description of your Claim, and (4) a description of the specific relief you seek. If COMPANY does not resolve the Dispute within 45 days after it receives your written notification, you may pursue your Dispute in arbitration. You may pursue your Dispute in a court only under the circumstances described below.

### e.  Exclusions from Arbitration/Right to Opt Out

Notwithstanding the above, you or COMPANY may choose to pursue a Dispute in court and not by arbitration if (i) the Dispute qualifies, it may be initiated in small claims court; or (ii) YOU PROVIDE THE COMPANY WRITTEN NOTICE OF YOUR DESIRE TO OPT-OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST CONSENT TO THIS AGREEMENT (the "Arbitration Opt-Out Notice"). To opt-out of these arbitration procedures, you must provide written notification to:

**For all United States users:** SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115.

**For all other users:** SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

Your written notification must include (1) your name, (2) your address, and (3) a clear statement that you do not wish to resolve disputes with COMPANY through arbitration. Your decision to opt-out of this Provision will have no adverse effect on your relationship with COMPANY. If you do not provide the Company with an Arbitration Opt-Out Notice within 30 days from the date that you first consent to these Terms, you will be deemed to have knowingly and intentionally waived your right to litigate any dispute except as expressly set forth in clauses (i) and (ii) above.

Additionally, notwithstanding the above, COMPANY reserves the right to bring an action in any court of competent jurisdiction against you to stop and/or seek compensation for the intentional or willful misuse or abuse (e.g. hacking or falsifying location) of its intellectual property, services, and products.

### f.  Arbitration Procedures − United States Users

If this Provision applies and the Dispute is not resolved as provided above ("Pre-Arbitration Claim Resolution") either you or COMPANY may initiate arbitration proceedings. The American Arbitration Association ("AAA"), www.adr.org, or JAMS, www.jamsadr.com, will arbitrate all Disputes, and the arbitration will be conducted before a single arbitrator. The arbitration shall be commenced as an individual arbitration. Unless both you and the Company agree in writing, the arbitrator shall not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. All issues shall be for the arbitrator to decide, including the scope and enforceability of this Provision, as well as any dispute related to its interpretation, applicability, or formation, including any claim that all or any part of it is void or voidable. For arbitration before AAA, for Disputes of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for Disputes involving $75,000 or more, the AAA's Commercial Arbitration Rules will apply. In either instance, the AAA's Optional Rules for Emergency Measures Of Protection shall apply. The AAA rules are available at www.adr.org or by calling 1-800-778-7879. For arbitration before JAMS, the JAMS Comprehensive Arbitration Rules & Procedures and the JAMS Recommended Arbitration Discovery Protocols For Domestic, Commercial Cases will apply. The JAMS rules are available at www.jamsadr.com or by calling 1-800-352-5267. This Provision governs in the event it conflicts with the applicable arbitration rules. Under no circumstances will class action procedures or rules apply to the arbitration. Because the Service and these Terms concern interstate commerce, the Federal Arbitration Act ("FAA") governs the arbitrability of all Disputes.

However, the arbitrator will apply applicable substantive law consistent with the FAA and the applicable statute of limitations or condition precedent to suit.

**Arbitration Award** – The arbitrator may award on an individual basis any relief that would be available pursuant to applicable law, and will not have the power to award relief to, against or for the benefit of any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Such award will be final and binding on the parties, except for any right of appeal provided by the FAA, and may be entered in any court having jurisdiction over the parties for purposes of enforcement.

**Location of Arbitration** – For Disputes between the COMPANY and users who are residents of the United States, you or COMPANY may initiate arbitration in either San Francisco, California or the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution. In the event that you select the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, COMPANY may transfer the arbitration to San Francisco, California in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the arbitrator.

**Payment of Arbitration Fees and Costs** – Each Party shall pay its own arbitration filing fees and arbitrator's costs and expenses. You are responsible for all fees and costs that You incur in the arbitration, including, but not limited to, attorneys or expert witnesses. Fees and costs may be awarded as provided pursuant to applicable law.

    g. **Arbitration Procedures – Users Outside the United States**

For Disputes between the COMPANY and users who are not residents of the United States that are not resolved through the Pre-Arbitration Claim Resolution procedures set forth above, either you or COMPANY may initiate arbitration by submitting the Dispute to the Hong Kong International Arbitration Centre ("HKIAC") for arbitration. Such arbitration shall be conducted exclusively in Hong Kong, at HKIAC, in accordance with the UNCITRAL Arbitration Rules in effect at the time of applying for arbitration. The appointing authority shall be HKIAC. The language to be used in the arbitral preceding shall be English. In such arbitration before HKIAC, this Agreement shall be construed in accordance with and governed by the laws of Hong Kong, regardless of choice of laws or conflicts of laws.

The arbitral award is final and binding upon both parties and the award shall be rendered in the English language pursuant to the laws of Hong Kong. No demand for arbitration may be made after the date when the institution of legal or equitable proceedings based on such claim or dispute would be barred by the applicable statute of limitation.

    h. **Severability**

If any clause within this Provision (other than the Class Action Waiver clause above) is found to be illegal or unenforceable, that clause will be severed from this Provision, and the remainder of this Provision will be given full force and effect. If the Class Action Waiver clause is found to be illegal or unenforceable, this entire Provision will be unenforceable and the Dispute will be decided by a court.

    i. **Continuation**

This Provision shall survive this Agreement, the termination of your Account (if applicable), and/or your access to or use of the Service.

    19. **Disclaimer of Warranties**

The Service (including the Application) and all content thereon or therein are provided "as is", without warranty of any kind, either express, implied or statutory. Without limiting the foregoing, COMPANY our partners, and our and their respective affiliates, subsidiaries, officers, directors, employees, agents and licensors (collectively, the "COMPANY Parties") explicitly disclaim any warranties of merchantability, fitness for a particular purpose, quiet enjoyment or non-infringement, and any warranties arising out of course of dealing or usage of trade. The COMPANY Parties make no warranty that the Service will meet your requirements or be available on an uninterrupted, secure, or error-free basis. The COMPANY Parties make no warranty regarding the quality of any products, services or content obtained through the service or the accuracy, timeliness, truthfulness, completeness or reliability of any content obtained through service.

You are solely responsible for all of your communications and interactions with other users of the Service and with other persons with whom you communicate or interact as a result of your use of the Service. You understand that COMPANY does not screen or inquire

into the background of any users of the Service, nor does COMPANY make any attempt to verify the statements of users of the Service. The COMPANY Parties make no representations or warranties as to the conduct of users of the service or their compatibility with any current or future users of the service. You agree to take reasonable precautions in all communications and interactions with other users of the service and with other persons with whom you communicate or interact as a result of your use of the service, particularly if you decide to meet offline or in person. Some jurisdictions do not allow the disclaimer of implied terms in contracts with consumers and as a result the disclaimers of this section

20. **Limitation of Liability**

You acknowledge and agree that, to the maximum extent permitted by law, the entire risk arising out of your access to and use of the service, including the application, remains with you. Neither the COMPANY Parties nor any other party involved in creating, producing, or delivering the service will be liable for any incidental, special, exemplary or consequential damages, including lost profits, loss of data, loss of goodwill, service interruption, computer damage or system failure, the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress arising out of or in connection with these terms or from the use of or inability to use the service, or from any communications, interactions or meetings with other users of the service or other persons with whom you communicate or interact as a result of your use of the Service, whether based on breach of warranty, breach of contract, tort (including negligence), product liability or any other legal theory, and whether or not the company parties have been informed of the possibility of such damage, even if a limited remedy set forth herein is found to have failed of its essential purpose.

In no event will the COMPANY Parties' aggregate liability arising out of or in connection with these terms or from the use of or inability to use the services, any part thereof, or any content exceed five hundred dollars ($500). The limitations of damages set forth above are fundamental elements of the basis of the bargain between COMPANY and you. Some jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, so the above limitation may not apply to you.

21. **Indemnity**

You agree to indemnify, save, and hold the COMPANY Parties harmless from any claims, losses, damages, liabilities, including legal fees and expenses, arising out of your use or misuse of the Service, any violation by you of these Terms, any of your User Content, or any breach of the representations, warranties, and covenants made by you herein. COMPANY reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify COMPANY, and you agree to cooperate with COMPANY's defense of these claims. COMPANY will use reasonable efforts to notify you of any such claim, action, or proceeding upon becoming aware of it. You agree that the provisions in this Indemnity section will survive this Agreement, the termination of your Account (if applicable), and/or your access to or use of the Service.

22. **Additional Mobile Application Terms**

The following additional terms and conditions apply with respect to any Application that COMPANY provides to you designed for use on an Apple iOS-powered mobile device (an "iOS App"):

You acknowledge that these Terms are between you and COMPANY only, and not with Apple, Inc. ("Apple").

Your use of the iOS App must comply with Usage Rules set forth in Apple's then-current App Store Terms of Service.

COMPANY, and not Apple, is solely responsible for our iOS App and the services and content available thereon. You acknowledge that Apple has no obligation to provide maintenance and support services with respect to our iOS App. To the maximum extent permitted by applicable law, Apple will have no warranty obligation whatsoever with respect to our iOS App and any other claims, losses, liabilities, damages, costs or expenses attributable to any failure of the iOS App to conform to any warranty.

You agree that COMPANY, and not Apple, is responsible for addressing any claims by you or any third party relating to our iOS App or your possession and/or use of our iOS App, including, but not limited to: (i) product liability claims; (ii) any claim that the iOS App fails to conform to any applicable legal or regulatory requirement; and (iii) claims arising under consumer protection or similar legislation, and all such claims are governed solely by these Terms and any law applicable to us as provider of the iOS App.

You agree that COMPANY, and not Apple, shall be responsible, to the extent required by these Terms, for the investigation, defense, settlement and discharge of any third party intellectual property infringement claim related to our iOS App or your possession and use

of our iOS App.

You represent and warrant that (i) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

You agree to comply with all applicable third party terms of agreement when using our iOS App (e.g., you must not be in violation of your wireless data service terms of agreement when using the iOS App).

You agree that Apple and Apple's subsidiaries are third party beneficiaries to these Terms as they relate to your license to use the iOS App. Upon your acceptance of these Terms, Apple will have the right (and will be deemed to have accepted the right) to enforce these Terms against you as they relate to your license of the iOS App as a third party beneficiary thereof.

The following additional terms and conditions apply with respect to any application that COMPANY provides to you designed for use on an Android-powered mobile device (an "Android App"):

You acknowledge that these Terms are between you and COMPANY only, and not with Google, Inc. ("Google").

Your use of the Android App must comply with Google's then-current Google Play Terms of Service.

COMPANY, and not Google, is solely responsible for the Android App, the services and content available thereon and the support and maintenance thereof. Google has no obligation or liability to you with respect to the Android App or these Terms.

23. **Controlling Law and Jurisdiction**

To the extent these Terms allow you or COMPANY to initiate litigation in a court, other than for small claims court actions, you and COMPANY agree to the exclusive jurisdiction of and venue in the state and federal courts located in San Francisco, California. You and COMPANY each hereby waives any objection to jurisdiction and venue in such courts. Except as provided in the "Dispute Resolution and Arbitration Provision" (above), these Terms, your use of the Service, and all claims or causes of action (whether in contract, tort, or statute), that may be based upon, arise out of, or relate to these Terms, shall be governed by and enforced in accordance with the laws of the State of California, including its statutes of limitation, without regard to its conflict of laws provisions. If you reside in a country in which this clause is prohibited by law, this section does not apply to you.

24. **Entire Agreement**

These Terms constitute the entire and exclusive understanding and agreement between COMPANY and you regarding the Service, and these Terms supersede and replace any and all prior oral or written understandings or agreements between COMPANY and you regarding the Service.

25. **Assignment**

You may not assign or transfer these Terms, by operation of law or otherwise, without COMPANY's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be of no effect. COMPANY may assign or transfer these Terms, at its sole discretion, without restriction. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

26. **Notices**

Any notices or other communications permitted or required hereunder, including those regarding modifications to these Terms, will be in writing and given by COMPANY (i) via e-mail (in each case to the address that you provided by your Facebook Login) or (ii) by posting to the Service. Notices sent by email will be effective when we send the email, and notices we provide by posting to the Service will be effective upon posting. For all United States users, any notices or other communications permitted or required hereunder by you, shall be in writing and addressed to: SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115. For all other users, any notices or other communications permitted or required hereunder by you, shall be in writing and addressed to SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong. Any notices that you provide without compliance with this section shall have no legal effect.

27. **California Consumer Notice**

Under California Civil Code section 1789.3, California users are entitled to the following consumer rights notice: The Service is provided by SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong. If you have a question or complaint regarding the Service, you may contact us via e-mail for Cash Frenzy at cashfrenzy-support@spinxgames.com; Jackpot Crush at jackpotcrush-support@spinxgames.com; Lotsa Slots at LotsaSlots-cs@spinxgames.com; Vegas Friends at VegasFriends-cs@spinxgames.com; Cash Bash at cashbash-support@spinxgames.com; Cash Club at cashclub-support@spinxgames.com; and Jackpot World at jackpotworld-support@spinxgames.com. You may also contact us by writing to SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

California residents may reach the Complaint Assistance Unit of the Division of Consumer Service of the California Department of Consumer Affairs by post at 1625 North Market Blvd., Sacramento, CA 95834 or by telephone at (916) 445-1254 or (800) 952-5210 or Hearing Impaired at TDD (800) 326-2297 or TDD (916) 322-1700.

28. **Force Majeure**

In delivering the Service or providing the Applications, COMPANY shall not be liable with respect to any damages, injuries, nonperformance or delay in performance by reason of any act of God, weather, fire, flood, plague, acts of terror or foreign enemy, satellite or network failure, governmental order or regulation, trade dispute, or any other cause beyond its respective control.

29. **Waiver; Severability**

The failure of COMPANY to enforce any right or provision of these Terms will not constitute a waiver of future enforcement of that right or provision. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of COMPANY. Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise. If for any reason a court of competent jurisdiction finds any provision of these Terms invalid or unenforceable, that provision will be enforced to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect.

30. # Subscription Terms

SpinX is pleased to offer subscription services for some of its games. Our subscription services include a recurring payment plan for our Services, including Virtual Items, as defined in our Terms of Service.

By clicking the purchase button within one of our games or by purchasing a subscription through a platform provider such as Google or Apple, you are agreeing to purchase a subscription, are requesting that SpinX begin supplying the subscription services immediately, are entering into a periodic subscription contract with SpinX, and are authorizing a charge of a periodic subscription fee to you at the rate quoted at the time of purchase. Your subscription will automatically renew at the start of each billing period unless and until you cancel your subscription or we terminate it. Please note that subscription prices, charges and service offerings are subject to change. If SpinX makes a change to the subscription rate, we will let you know in advance.

**Your purchase of a SpinX subscription service will be processed through a platform provider, such as Apple or Google. The platform will charge you for the subscription fee and the platform's payment terms will apply. You may cancel your subscription service at any time directly through the platform. Please review the appropriate platform's terms of service and payment terms for additional information.**

ANY SUBSCRIPTION PAYMENTS THAT HAVE ALREADY BEEN PROCESSED ARE NONREFUNDABLE AND THERE ARE NO REFUNDS OR CREDITS FOR PARTIALLY USED SUBSCRIPTION PERIODS.

SpinX may occasionally offer promotions to players who agree to start a subscription or who already have a current subscription. These promotional items will not be a part of your ongoing subscription.

Please also refer to our Terms of Service and Privacy Policy, which govern use of SpinX's games and services.

If you have any questions regarding our subscription services, please contact our customer support team at support@bolegames.mail.helpshift.com.

THE SECTION TITLES IN THESE TERMS OF SERVICE ARE FOR CONVENIENCE ONLY AND HAVE NO LEGAL OR CONTRACTUAL EFFECT.

# Exhibit B

 **AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| |
|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer ☐ Business |
| 2. Briefly explain the dispute:<br><br>SEE ATTACHED |
| 3. Specify the amount of money in dispute, if any: $ SEE ATTACHED |
| 4. State any other relief you are seeking:<br><br>☐ Attorney Fees ☐ Interest ☐ Arbitration Costs ☑ Other; explain: SEE ATTACHED |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held:<br>City: Sewell                                   State: New Jersey |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |
| **Consumer:** |
| Name: Sharon King |
| Address: 5 Orion Way |

| | | |
|---|---|---|
| City: Sewell | State: New Jersey | Zip Code: 08080 |

| | |
|---|---|
| Telephone: (856) 287-2571 | Fax: |

| |
|---|
| Email Address: sharonk2966@gmail.com |
| **Consumer's Representative (if known):** |
| Name: Luna Droubi |
| Firm: Beldock Levine & Hoffman, LLP |
| Address: 99 Park Avenue, PH/26th Floor |

| | | |
|---|---|---|
| City: New York | State: New York | Zip Code: 10016 |

| | |
|---|---|
| Telephone: 212-227-5875 | Fax: |

| |
|---|
| Email Address: ldroubi@blhny.com |
| **Business:** |
| Name: SpinX Games Ltd. |
| Address: 2021 Fillmore St. #93 |

| | | |
|---|---|---|
| City: San Francisco | State: California | Zip Code: 94115 |

| | |
|---|---|
| Telephone: | Fax: |

| |
|---|
| Email Address: |



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: | | |
| Firm: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |
| Date:  December 19, 2022 | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

---

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

---

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **SHARON KING,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **SPINX GAMES LTD.,** | ) |
| | ) |
| **Respondent.** | ) |

### DEMAND FOR ARBITRATION

1. Claimant, Sharron King, is resident of citizen of Gloucester County, New Jersey over the age of 21.

2. Respondent SpinX Games Ltd. is a corporation based in San Francisco, CA that specializes in the development and publication of mobile casino games.

3. SpinX does business in the United States and specifically in New Jersey, and its mobile games and applications are accessible in this state.

4. The SpinX casino apps contains games that operate exactly as casino slot machines do. Each game features a grid of multiple simulated reels that spin, and the consumer wins or loses based on the alignment of symbols on the reels, just as they would on a physical slot machine. The "bets" made on each spin are won or lost based on "coins" which are sold in the app but have no intrinsic value. These coins can only be used to play the games in these apps.

5.      Ms. King is one of many New Jersey residents who downloaded the SpinX's apps and played the games therein. When Ms. King initially downloaded the app, she received a cache of coins for free. Again, these coins could be used only to play the games in the apps. When her initial balance was gone, she could not continue to play unless she purchased coins from SpinX. On numerous occasions during the last four years, Ms. King paid a total of hundreds or thousands of dollars to SpinX for these coins.

6.      On many occasions, Ms. King spent more than five dollars, often considerably more, in one twenty-four hour period on SpinX's apps.

7.      Under New Jersey law, the games in SpinX's casino apps constitute illegal slot machines, and the purchase of coins in the apps, which can only be used to play the slot machines, are unlawful gaming transactions. N.J.R.S. 2A:40-1.

8.      Having lost money in these illegal transactions, Claimant may bring an action to recover all money lost within the last six months:

> If any person shall lose any money, goods, chattels or other valuable thing, in violation of section 2A:40-1 of this title, and shall pay or deliver the same or any part thereof to the winner, or to any person to his use, or to a stakeholder, such person may sue for and recover such money, or the value of such goods, chattels, or other valuable thing, from such winner, or from such depositary, or from such stakeholder, whether the same has been delivered or paid over by such stakeholder or not, in a civil action provided such action is brought within 6 calendar months after payment or delivery.

N.J.R.S. § 2A:40-5.

9.     Under section 2A:40-5, Claimant brings this action to recover all money lost to Respondent during the six months preceding the filing of this demand.

10.     New Jersey law also allows any person to bring an action to recover money lost in the state in illegal gambling that was not recovered in the initial six months, with the money to be split with the state:

> If the person who shall lose and pay such money, or lose and deliver such thing or things as aforesaid, shall not, within the time aforesaid, without collusion, sue for the money or other thing or things so lost and paid, or delivered, any other person may sue for and recover the same, with costs of suit, from such winner, depositary or stakeholder as aforesaid; the one moiety thereof to the use of the person suing for the same, and the other moiety to the use of the state; provided the action is instituted within 6 calendar months from and after the expiration of the time limited in section 2A:40-5 of this title for the loser to sue for the same.

N.J.R.S. § 2A:40-6.

11.     Under section 2A:40-6, Claimant brings this action to recover all money collected by SpinX from residents of the State of New Jersey within the applicable limitations period, and which the losers thereof have not filed suit.

<div style="margin-left:40%">

_/s/Luna Droubi_
Luna Droubi
Beldock, Levine & Hoffman, LLP
Of Counsel

_/s/John E. Norris_
John E. Norris
Davis Norris, LLP
Of Counsel

</div>